IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TERRENCE JOSEPH VERGE                                                           PLAINTIFF

      v.                         Civil No. 4:07-cv-04082

LOUISE PHILLIPS; Jail Administrator,
Hempstead County Detention Facility;
LT. JERRY BUSH, Hempstead County
Detention Facility; LT. MIKE GRAY,
Hempstead County Detention Facility;
and HARVEY MAXFIELD,
Hempstead County Detention Facility                                             DEFENDANTS

### MEMORANDUM OPINION

      Plaintiff, Terrence Joseph Verge (hereinafter "Plaintiff" or "Verge"), filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Verge contends his constitutional rights were violated while he was incarcerated at the Hempstead County Detention Facility in Hope, Arkansas. Specifically, he contends his rights were violated by the conditions to which he was subjected while confined there, and when he was denied adequate medical care.

      Defendants filed a motion for summary judgment (Doc. 39). To assist Verge in responding to the motion for summary judgment, I propounded a questionnaire (Doc. 43). Verge filed a timely response to the questionnaire (Doc. 44). Pursuant to the consent of the parties (Doc. 23), the motion is now before me for decision.

### I. Background

      Verge was booked into the Hempstead County Detention Facility (HCDF) on November 1, 2006. *Plaintiff's Response* (Doc. 44)(hereinafter *Resp.*) at ¶ 1. On November 8th at approximately 0900 or 9:00 a.m. Harvey Maxfield responded to an emergency call from C-pod. *Id.* at ¶ 2.

When Maxfield arrived in C-pod, he saw Verge in a prone position on the floor. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) B. Verge said he had slipped and fallen in some water on the floor. *Resp.* at ¶ 5. Verge said he was in severe pain and could not move. *Id.* at ¶ 6.

Emergency Medical Services was called to the jail and he was transported to Medical Park Hospital where he was treated. *Resp.* at ¶ 7(A) & ¶ 14. According to Verge, he suffered bruised ribs and back injuries in the fall. *Id.* at ¶ 7(B). He was prescribed Flexeril and Naproxen for muscle spasms and pain. *Id.* at ¶ 10.

Prior to his fall, Verge maintains he and several other inmates had written requests or grievances about water leaking from the shower. *Resp.* at ¶ 8. Although Verge does not know the dates these complaints were submitted, he does recall that he submitted a complaint after he was booked into the HCDF on June 25, 2006, and before he went to the Arkansas Department of Correction (ADC) to serve a term of imprisonment on his parole violation sometime in the summer. *Resp.* at ¶¶ 1 & 8.

Verge indicates the seal around the border of the shower was leaking. *Resp.* at ¶ 9. He maintains this allowed a large amount of water to leak from the shower when the shower was in use and afterwards. *Id.*

According to Defendants, the floor seal of the shower was replaced in September of 2006. *Defts' Ex.* E. Lt. Gray maintains the floor seal of the shower hadn't leaked since it had been replaced. *Id.* Lt Gray in his supplementary report notes that Verge's "alleged slip follows the patterns of two other inmates who faked falls by adjusting the shower head to spray on the floor and leaving the shower curtain open." *Id.*

Verge does not dispute that the shower seal was replaced. *Resp.* at ¶ 11. In fact, he indicates someone said they had tried to fix the shower after he went to serve his violation. *Id.* However, he asserts the shower was leaking again. *Id.*

According to Verge:

-2-

> The shower was leaking bad again when I returned because the nurse could not walk past the shower to pass out medication for fear of slipping and falling. Once I fell, they put a 2 x 4 down to keep the water from leaking out into the dayroom and in front of the cell doors.

*Resp.* at ¶ 12.

Between November 1, 2006, and November 8, 2006, Verge states he had noticed water leaking from the shower whenever he walked through there. *Resp.* at ¶ 24. He states: "I saw whenever I walked through there but you forget about it sometimes when you are coming out of a cell and it's in the doorway." *Id.* He was not aware of anyone else falling because of the water. *Id.* at ¶ 25. He is not aware of any inmates deliberately causing water to spray out of the shower and onto the floor. *Id.* at ¶ 26.

Verge also maintains you cannot adjust the shower heads up, down, or sideways. *Resp.* at ¶ 13. He states he hasn't seen a prison shower head you can move up and down. *Id.* He asserts you can only adjust the water pressure. *Id.*

On November 10th Verge submitted a request asking to see a doctor. *Resp.* at ¶ 15. He said something was wrong with his spine. *Id.* He stated his legs were hurting and tingling. *Id.* In response, he was transported to the Medical Park Hospital that same day. *Id.* at ¶ 16. He recalls receiving x-rays but doesn't recall if he received any other treatment. *Id.* at ¶ 17.

On November 14th Verge submitted a complaint. *Resp.* at ¶ 18. He stated he hadn't been able to take a shower since last Tuesday because he had been hurting. *Id.* He said he needed to go to the doctor because the medicine he was taking wasn't strong enough. *Id.* He also stated that he was having bad muscle spasms. *Id.*

In response, Louise Phillips indicated she had called the nurse practitioner. *Resp.* at ¶ 19. The nurse practitioner was going to come and see Verge that evening or the following morning at 8:00 a.m. *Id.*

Verge cannot recall when the nurse practitioner came to see him but he believes it was a few days after he wrote the request. *Resp.* at ¶ 20. Although Verge was asked to describe the treatment he received from the nurse practitioner, he did not do so. *Id.*

Verge was released on November 20th after posting bond. *Resp.* at ¶ 21. After his release, Verge did not obtain any medical treatment for his back and/or legs. *Id.* He indicates he could not afford it. *Id.* He states he laid in bed and took whatever pain medication he could get. *Id.* He drank a lot of "gin." *Id.* Verge indicates he did not normally drink hard liquor like that. *Id.*

He states he was in bad pain and still hurts sometimes now. *Resp.* at page 21. He states he could not play with his three little boys because of his back. *Id.* He states his boys felt like he just didn't want to play with them and that he was being mean. *Id.* at page 21-22. He states he could no longer engage in sexual relations with his finance and he could not seek employment. *Id.* at page 22. He indicates his finance had to quit her job to stay home and help him out. *Id.*

Verge received all medication prescribed to him by the medical personnel at Medical Park Hospital or the nurse practitioner. *Resp.* at ¶ 27. There is nothing on the Medical Park Hospital instructions to indicate that Verge was on bed rest, needed any medical devices to assist him, or was unable to get in and out of bed by himself. *Id.* at ¶ 28.

Verge did not submit another medical request after November 14th. *Resp.* at ¶ 29(A). He only submitted two requests for medical care–one on November 10th and one on November 14th. *Id.* at ¶ 29(B).

Verge maintains Phillips violated his federal constitutional rights because the leaking shower created a hazard for all inmates. *Resp.* at ¶ 30. He maintains it wasn't safe to be in that pod. *Id.* Verge states he doesn't know how the jail passed inspection with all the "cracked up walls & leaking to falling ceilings." *Id.*

Verge was asked to explain how he believed Jerry Bush violated his federal constitutional rights. *Resp.* at ¶ 31. Verge responded: "He did not, he tried to help me in every way he could. I filled out the form wrong I guess because I meant to put him down as a witness. He did mash around on my ribs and he's not a medical physician." *Id.*

Similarly, when asked to explain how Lt. Gray violated his federal constitutional rights, Verge responded: "He didn't." *Resp.* at ¶ 32. With respect to Harvey Maxfield, Verge also stated Maxfield did not violate his rights and that he meant to put him down as a witness. *Id.* at ¶ 33.

## II.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient

evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III.  Discussion

Defendants have now moved for summary judgment. Defendants deny that Verge's constitutional rights were violated in anyway while he was incarcerated at the HCDF. Defendants maintain there is no evidence that they deliberately disregarded a substantial risk of danger arising from any inadequate condition in the HCDF. They maintain when they became aware of the leaking shower seal it was replaced. If it had begun to leak again, Defendants maintain they had no knowledge of it. With respect to Verge's denial of adequate medical care claim, Defendants maintain Verge only made two requests for medical care and both were promptly responded to and he received the ordered medical treatment.

Verge maintains the leaking shower caused a hazardous condition that Louise Phillips was aware of. He concedes an attempt was made to fix the seal but asserts it was leaking badly after this attempt to fix it was made. With respect to his denial of medical care claim, Verge points out that when he put in his November 14th complaint it was a few days before he was seen by the nurse practitioner. He also states that he is still having problems with his back and that his injury occurred while he was in the HCDF.

#### A.  Claims against Lt. Jerry Bush, Lt. Mike Gray, and Harvey Maxfield

Summary judgment will be entered in favor of Lt. Jerry Bush, Lt. Mike Gray, and Harvey Maxfield. With respect to each, Verge has indicated he does not contend they violated his federal

constitutional rights. *Resp.* at ¶¶ 31, 32, 33. Instead, he meant to list these individuals as witnesses rather than named defendants.

### B. Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at

875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case. Here, there are no genuine issues of fact as to whether Defendant Phillips acted with deliberate indifference towards Verge's safety. According to Verge, he complained about the leaking shower during a prior incarceration at the HCDF before he went to the ADC to serve time on the probation revocation. *Resp.* at ¶ 8. Verge concedes that while he was at the ADC, he was told the seal was replaced by personnel at the HCDF. *Id.* at ¶ 11.

According to Defendants this repair occurred in September of 2006. *Defts' Ex.* F. Verge did not return to the HCDF until November 1, 2006. *Resp.* at ¶ 1. He fell on November 8th. *Id.* at ¶ 5. While Verge asserts the shower was leaking between November 1st and November 8th, there is no evidence that he submitted a complaint about it leaking during this time frame or that any other inmate did. Verge is not aware of any other inmate having fallen as a result of the condition. *Id.* at ¶ 25. There is simply nothing to suggest the Defendant Phillips failed to act in the face of a risk of harm to the health or safety of the detainees at the HCDF. *See e.g., LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishments")(citation omitted).

"[E]very injury suffered by an inmate does not necessarily translate into constitutional liability for prison officials." *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996). While I do not

hold that slippery floors or faulty and leaking showers can never establish a claim of constitutional dimension, I believe that under the circumstances of this case no claim of constitutional dimension is stated. *See e.g., Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998)(inmate was on crutches and fell and injured himself several times--his repeated injuries and unsafe conditions state a claim where slippery floors without protective measures create sufficient danger). There is simply nothing in the summary judgment record to support a finding that Defendant Phillips was aware of the condition of the shower seal, or that she failed to maintain a safe area for the detainees, or that she was aware there was a substantial risk detainees would fall because of the leaking shower seal and that a fall would cause serious harm. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 110 (8th Cir. 1998)(Plaintiff must prove the officials knew of facts from which they could infer a substantial risk of serious harm existed and that the officials drew that inference).

### C. Denial of Adequate Medical Care

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, Verge must prove that Defendant Phillips acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere

disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).

In this case there is no evidence of deliberate indifference on the part of Defendant Phillips. "For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

On November 8th, the day Verge fell, he was taken to the hospital for medical care. *Resp.* at ¶ 7(A). He was prescribed medication by personnel at the hospital. *Id.* at ¶ 10. He requested medical care on November 10th. *Id.* at ¶ 10. He was transported to the hospital the same day. *Id.* at ¶ 16. On November 14th, Verge stated he needed to see the doctor. *Id.* at ¶ 18.

Defendant Phillips responded that she had called the nurse practitioner and the nurse was coming to see Verge that evening or the following morning at 8:00 a.m. *Defts' Ex.* F at page 2. Verge does not believe he saw the nurse practitioner for a "few days" after he wrote the request. *Resp.* at ¶ 20. However, he does not recall when he was seen. *Id.* Obviously, it was prior to his release from the HCDF on November 20th. *Id.* at ¶ 21.

There is no indication in the record that any delay in Verge seeing the nurse practitioner was attributable to Defendant Phillips. Nor is there any indication that Verge suffered any harm from the delay in his seeing the nurse practitioner, if in fact there was a delay. *See Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(objective seriousness of delay in treatment must be measured by reference to effect of delay which must be shown by verifying medical evidence).

I do not believe there is any evidence of deliberate indifference on Defendant Phillips' part. Verge's requests for medical treatment were dealt with promptly. He was taken to the hospital twice and seen by the nurse practitioner once. Verge received all medication prescribed to him medical personnel at Medical Park Hospital or the nurse practitioner. *Id.* at ¶ 27.

### IV.  Conclusion

For the reasons stated, I find Defendants' motion for summary judgment (Doc. 39) should be granted. A separate judgement in accordance with this opinion will be entered.

**DATED** this 5th day of February, 2009.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE